**Electronically Filed**
**Intermediate Court of Appeals**
**29778**
**17-DEC-2010**
**07:50 AM**

NO. 29778

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I DEPARTMENT OF EDUCATION,
Plaintiff-Appellee,
v.
M.S. and J.S., in their capacity as parents
and legal guardians of M.S.,
Defendants-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-0034)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

In this secondary appeal, Defendants-Appellants M.S. and J.S. (collectively, Parents), in their capacity as parents and legal guardians of M.S. (Minor), appeal from the Judgment filed on March 17, 2009 in the Circuit Court of the First Circuit (circuit court).[1]  The circuit court entered judgment in favor of the State of Hawai'i Department of Education (the State) and against Parents.  In the Judgment, the circuit court reversed the decision of the Department of Commerce and Consumer Affairs Administrative Hearings Officer (Hearings Officer), who had found in favor of Parents.

_____

[1]  The Honorable Gary W.B. Chang presided.

On appeal, Parents contend the circuit court erred in reversing the Hearings Officer's December 7, 1007 Findings of Fact, Conclusions of Law, and Decision (Decision) and denying Parents' cross-appeal from the Decision because

(1) the court failed to provide findings of fact and conclusions of law in support of its Judgment, in violation of the Individuals with Disabilities Education Act (IDEA);

(2) the court erroneously applied a "some" educational benefits rather than a "meaningful" educational benefits analysis with regard to whether Minor had been denied a Free and Appropriate Public Education (FAPE) for the 2005-2006 and 2006-2007 school years;

(3) a "[f]irst bite at failure" is not required under the IDEA;

(4) the court failed to adequately explain why it reversed the Hearings Officer's Decision; and

(5) the court failed to apply the correct standard of review.

Parents ask that we reverse the Judgment and hold that they are entitled to full and equitable relief and compensatory damages.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude this appeal is without merit.

A.    Findings of Fact

Parents argue that the circuit court failed to provide findings of fact and conclusions of law in support of its Judgment, in violation of the IDEA.  They cite to 34 C.F.R.[2] § 300.512(a)(5) to support this argument.  That section provides: "Any party to a hearing conducted pursuant to §§ 300.507 through 300.513 or §§ 300.530 through 300.534, or an appeal conducted

_____

[2] Code of Federal Regulations

2

pursuant to § 300.514, has the right to . . . [o]btain written, or, at the option of the parents, electronic findings of fact and decisions." As Parents admit, 34 C.F.R. § 300.512 pertains to decisions by the Hearings Officer, not the circuit court. Parents cite to no authority for their argument that the circuit court was required to provide them with written findings of fact and conclusions of law, and we find none. Further, we note that Parents did not request written findings of fact or conclusions of law from the circuit court or move for reconsideration or clarification of the February 17, 2009 Order Reversing the Department of Commerce and Consumer Affairs Administrative Hearings Office December 7, 2007 Decision.

### B. Analytical standard

Parents contend that during the hearing and in its oral ruling, the circuit court erroneously applied a "some" educational benefits rather than a "meaningful" educational benefits analysis with regard to whether Minor was denied a FAPE for the 2005-2006 and 2006-2007 school years. Parents maintain that throughout the hearing, the circuit court "referred solely to the pre 1997 Rowley concept of the substantive requirement under the IDEA of 'some educational benefit' as opposed to 'meaningful educational benefit,'" which has been the standard in the Ninth Circuit since 1997. Parents note that the Hearings Officer applied the meaningful educational benefit standard when the Hearings Officer concluded in the Decision that Minor was entitled to a program that would allow Minor "to make meaningful educational gains." Parents cite to N.B. v. Hellgate Elementary School District ex rel. Board of Directors, Missoula County, Montana, 541 F.3d 1202, 1212-13 (9th Cir. 2008), and Blake C. ex rel. Tina F. v. Department of Education, State of Hawaii, 593 F. Supp. 2d 1199, 1205-07 (D. Hawai'i 2009), to support this argument.

In Hellgate, the United States Court of Appeals for the Ninth Circuit stated that "[u]nder the 1997 amendments to the IDEA, a school must provide a student with a 'meaningful benefit'

in order to satisfy the substantive requirements of the IDEA."
541 F.3d at 1212-13. In <u>Blake C.</u>, the United States District
Court for the District of Hawai'i construed the phrase
"meaningful educational benefit":

> Various opinions have left it ambiguous as to what the
> precise difference, if any, is between meaningful benefit
> and some benefit. Indeed, the circuits are split. The
> Court interprets the latest guidance from the Ninth Circuit
> in *Hellgate* as meaning that an IEP must be individualized
> and tailored to the unique needs of the child and reasonably
> calculated to produce benefits (i.e., learning, progress,
> growth) that are significantly more than de minimus, and
> gauged in relation to the potential of the child at issue.
>
> Only by considering an individual child's capabilities
> and potentialities may a court determine whether an
> education benefit provided to that child allows for
> meaningful advancement. That is, the programs must be
> sufficiently individualized to produce meaningful benefit.
> Programs must be individually tailored to produce more than
> a trivial education benefit. A satisfactory IEP must
> provide significant learning. What is appropriate cannot be
> reduced to a single standard but, rather, must be gauged in
> relation to the child's potential.
>
> For example, when students display considerable
> intellectual potential, IDEA requires a great deal more than
> a negligible benefit. Courts must analyze the type and
> amount of learning of which a student is capable in order to
> determine how much of an educational benefit must be
> provided.

593 F. Supp. 2d at 1206 (internal quotation marks, citations,
footnote, and brackets omitted).

In the instant case, in its oral ruling, the circuit
court did not explicitly find that the State had provided Minor
with either a "meaningful" educational benefit or "some"
educational benefit. However, the circuit court's oral ruling
reveals that the court clearly considered whether the FAPE the
State offered to Minor was "individualized and tailored to"
Minor's "unique needs" and "reasonably calculated to produce
benefits" that were "significantly more than de minimus, and
gauged in relation to" Minor's potential. <u>Blake C.</u>, 593 F. Supp.
2d at 1206. The circuit court stated that in passing the IDEA,
"Congress sought to provide <u>meaningful access to education</u>. . . .
Therefore, the [State] does provide a [FAPE] if it provides
specialized instruction and related services which are

individually designed to provide educational benefit to a special needs student." (Emphasis added.) The circuit court went on to hold:

> In the case at bar, the [Hearings Officer] found that [Minor] was enrolled in a private placement because [Minor's] mother did not believe the [State's] program could meet [Minor's] chronic behavioral problems. The behavioral problems referred to in Findings [sic] of Fact 63 [of the Hearings Officer's Decision] appears [sic] to be [Minor's] behavioral problems at home.
>
> The record does show that [Minor's] IEP dated March 16 and 17, 2006 did address [Minor's] homework, appropriate ways to express [Minor's] emotional and self-esteem and self-confidence needs.
>
> The strategies and method appear to have been working because the record does show that [Minor] was receiving [sic] passing grade, and [Minor] was advancing from grade to grade.
>
> The record further shows that [Minor] was making progress based upon [Minor's] goals and objectives. Therefore, [Minor] was receiving educational benefit from [Minor's IEP] at the DOE [sic].
>
> The record is also clear that [Minor] also made progress at [Minor's] private placements; in fact, it appears that [Minor] made more progress in the private placement than [Minor] did while at the DOE [sic].
>
> There is great temptation to be favorably impressed and significantly influenced by the quality of the progress [Minor] achieved in his private placement. However, the law does not require the [State] to provide at no cost to parents the best educational program to maximize a student's potential.
>
> The [State] meets its obligations under the IDEA if the student receives educational benefits from his program, and the record shows that [Minor] did achieve such educational benefit in this case.
>
> With regard to the issue of homework . . . there was no evidence in the record that the educational benefits of homework are only achieved when the homework is done at home. The key benefit of homework is that it is done; that gives the student the opportunity to reinforce class work.
>
> The record shows that if [Minor] did not complete [Minor's] homework at home, [Minor] was allowed to complete it in school outside of [Minor's] class time. Therefore, there was insufficient evidence to show that the benefit of homework was lost if [Minor] did not do it on school grounds outside of the class time and not at home. As such, there was no failure of the [State] to provide a [FAPE], because [Minor] did [Minor's] homework on school grounds instead of home.

> Regarding science in the regular education setting, the [State] was not given a meaningful opportunity to implement its strategy to address [Minor's] low performance in science for the first three or four weeks of the fall semester, because [Minor] was removed on August 30, 2006 before the [State] had the chance to implement its IEP regarding science.
>
> Regarding the skills trainer to address behavioral problems at home, the Court agrees with the [Hearings Officer] that [Parents] failed to show that a skills trainer for [Minor's] behavioral problems at home was appropriate.
>
> [Minor's] own behavioral problems did not prevent [Minor] from achieving educational benefit from [Minor's] IEP. The [State] did provide a de facto skills trainer for [Minor's] homework by providing [Minor] a tutor.

Although the circuit court repeatedly refers to "educational benefit" throughout its oral ruling, the court does so after citing to a "meaningful access to education" standard and analyzing the facts according to that standard. The circuit court nowhere refers to a "some" educational benefit standard. Given the foregoing, the circuit court did not apply the wrong standard of review.

### C. "First bite at failure"

In the Decision, the Hearings Officer determined that the State had not provided Minor with a FAPE for the 2006-2007 school year because the State had not placed Minor in a special education science class, despite the opinion of Minor's science teacher (Mr. C) that Minor needed special education in that subject because Minor was receiving a "D" or "F" in the class a month into the semester. At oral argument, Parents' counsel argued that the Hearings Officer's decision on this issue was correct and the State was obligated to put Minor in a special education science class once Mr. C made his report. In response to a question by the circuit court, Parents' counsel conceded that Parents removed Minor from the public school and enrolled him in the private school soon after Mr. C made his report. The State's counsel responded that an IEP team meeting had been convened in response to Mr. C's report and the team discussed the possibility of moving Minor to a special education science class, but ultimately determined that a change could have a negative

6

emotional impact on Minor and Minor should remain in the regular education class with accommodations. At that meeting, Parents announced they would be enrolling Minor in the private school.

In its oral ruling, the circuit court stated:

> Regarding science in the regular education setting, the [State] was not given a meaningful opportunity to implement its strategy to address [Minor's] low performance in science for the first three or four weeks of the fall semester, because [Minor] was removed on August 30, 2006 before the [State] had a chance to implement its IEP regarding science.

Parents contend that a "[f]irst bite at failure" is not required under the IDEA. By this, they mean the circuit court erred in finding that the IDEA required an educational policy mandating that parents of a severely emotionally disturbed, learning disabled child should continue that child in an inappropriate and even failed educational placement, just to test the State's serial, subtle, small incremental changes in the offer of a FAPE to see if, at some point in time, any of the changes will actually work. Parents cite to Frank G. v. Board of Education of Hyde Park, 459 F.3d 356 (2d Cir. 2006), to support this argument.

In Frank G., the mother of a son diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) requested an impartial hearing to review an IEP developed for her son (Student) by a Committee on Special Education (CSE) in Student's school district (School District). Id. at 359-60. The CSE had recommended in the IEP that Student receive special education services at a public school. Id. at 360. In her request, Student's mother asked that CSE provide Student with special education services at the private school Student had been attending, instead. Id. Subsequently, Student's parents enrolled Student in a new private school (Upton Lake). Id. at 361. A hearing was held before an impartial hearing officer (IHO). Id. The IHO ruled that the School District was not required to reimburse Student's parents for tuition they paid for

7

the 2001-2002 school year because Upton Lake was not an appropriate placement for Student. Id.

The School District and Student's parents filed administrative appeals from the IHO's ruling to the State Review Officer (SRO). Id. The SRO affirmed the IHO's order. Id. Student's parents then filed a complaint in the United States District Court for the Southern District of New York, seeking tuition reimbursement for the 2001-2002 school year. Id. at 362. The district court found that Upton Lake was an appropriate placement for Student and awarded Student's parents tuition reimbursement. Id.

The School District appealed from the district court's judgment, arguing, among other things, that the School District had an "absolute legal defense" against Student's parents' reimbursement request based on 20 U.S.C. § 1412(a)(10)(C)(ii), which authorized reimbursement to a disabled child's parents who had previously received special education and related services under the authority of a public agency and who had enrolled the child in a private school without the private agency's consent or referral, if the court or hearing officer found that the agency had not made a FAPE available to the child in a timely manner prior to enrollment. Id. at 362 & 367. The School District argued that Student's parents were not entitled to reimbursement because they had enrolled Student in another school before the IHO had determined that Student was entitled to a FAPE. Id. at 368. The district court stated that the School District's interpretation of the statute would produce an absurd result because, among other things, it would "place the parents of children with disabilities in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency that devised the inappropriate placement." Id. at 372. The district court stated that

> [s]uch a result, it has been suggested, ensures that a
> parent's rejection of a public school placement is not based
> on mere speculation as to whether the recommended school

8

placement would have been appropriate. This suggestion turns on the erroneous assumption that parents would have to keep their child in a public school placement until it was clear that their speculation was borne out by a wasted year of actual failure. <u>Such a first bite at failure is not required by the IDEA</u>.

<u>Id.</u> (internal quotation marks and citation omitted; emphasis added).

<u>Frank G.</u> is inapplicable to this case because 20 U.S.C. § 1412 is not at issue here. In the instant case, the State did not argue and the circuit court did not find that Parents were barred from receiving tuition reimbursement for the 2006-2007 school year because they removed Minor from the public school before the Hearings Officer determined that Minor was entitled to a FAPE. <u>Frank G.</u>, 459 F.3d at 368. Rather, the circuit court ruled that Parents had not shown that the State failed to provide Minor with a FAPE for the 2006-2007 school year because the State was denied "a meaningful opportunity to implement its strategy to address [Minor's] low performance in science" when Parents removed Minor from the public school before the strategy could be implemented. In <u>Frank G.</u>, the district court held that if § 1412 were to be construed as the School District argued it should, parents of children with disabilities would be placed "in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency that devised the inappropriate placement." <u>Frank G.</u>, 459 F.3d at 372. In the instant case, the circuit court found that Parents failed to show that Minor's placement in a regular science class with accommodations was inappropriate in the first place.

The circuit court's finding on this issue did not suggest that Parents were required to take a "first bite at failure" to receive reimbursement for the private school tuition they paid for the 2006-2007 school year.

D. **Inadequate explanation for reversal**

Parents contend the circuit court failed to adequately explain why it reversed the Hearings Officer's Decision. Parents

maintain that the circuit court, when rendering its Judgment, erroneously failed to consider and/or address the Hearings Officer's Findings of Fact and Conclusions of Law specifically relating to Minor's global behavior problems. Parents allege that the circuit court "made no attempt to explain why it discredited the [Hearings Officer's] interpretation of some of the evidence set forth in the [Hearings Officer's] findings." Parents cite to Town of Burlington v. Department of Education for Commonwealth of Massachusetts, 736 F.2d 773, 791-92 (1st Cir. 1984), and Frank G. to support this contention.

In Town of Burlington, the United States Court of Appeals for the First Circuit stated:

> Because Congress intended courts to make bounded, independent decisions -- bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court -- the question of the weight due the administrative findings of facts must be left to the discretion of the trial court. The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply. This does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.

736 F.2d at 791-92. The United States Court of Appeals for the Second Circuit in Frank G. stated that "when reviewing administrative decisions, federal courts must base their decisions on the preponderance of the evidence, taking into account the evidence in the administrative record and any further evidence presented before the District Court by the parties." 459 F.3d at 367 (internal quotation marks, citation, and emphasis omitted).

In the instant case, there is no evidence in the record on appeal that the circuit court failed to carefully consider the Hearings Officer's findings of fact and conclusions of law. Town of Burlington, 736 F.2d at 791-92. In the circuit court's oral ruling, the court clearly "endeavor[ed] to respond to the hearing officer's resolution of each material issue." Id.

Parents cite to no authority requiring the circuit court to address on the record the Hearings Officer's findings of fact or conclusions of law one by one or explicitly state why the court interpreted the findings differently, and we find none.

Therefore,

IT IS HEREBY ORDERED that the Judgment filed on March 17, 2009 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, December 17, 2010.

On the briefs:

Karen J. Lee
for Defendants-Appellants.

Jerrold G.H. Yashiro and
Holly T. Shikada,
Deputy Attorneys General
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11